IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SB PB VICTORY, L.P., | : | CIVIL ACTION |
| *Petitioner,* | : | |
| | : | |
| v. | : | |
| | : | |
| TONNELLE NORTH BERGEN, LLC, | : | |
| and THOMAS F. VERRICHIA, | : | |
| *Respondents.* | : | No. 22-cv-05043 |

### MEMORANDUM

KENNEY, J.                                                                                                                        August 18, 2025

The Court writes for the benefit of the parties and assumes familiarity with the facts of the case. Petitioner moves to expand the receivership powers of Alan Gould and for a preliminary injunction (ECF No. 100). In April 2025, this Court appointed Mr. Gould as receiver over Respondent Thomas F. Verrichia's interest in certain corporate entities. *See* ECF No. 95 at 2. Petitioner now seeks to expand the scope of Mr. Gould's receivership to "all assets" of Respondent Verrichia and his wife, non-party Nancy Verrichia (collectively, "the Verrichias"), including their interests in specific entities and "future LLCs." *See* ECF No. 100-3 at 2. Petitioner also moves for a preliminary injunction requiring the Verrichias to, among other things, provide the receiver with certain information and relinquish control of assets and records. *See* ECF No. 100-2 at 13.

For the reasons set forth below, this Court will **GRANT** in part and **DENY** in part the Motion (ECF No. 100). As set forth below, the Court will grant a limited expansion of the receivership to cover the Verrichias' interests in specific entities. The Court will also order the Verrichias to cooperate with the receivership.

**I.      BACKGROUND**

The Court recently set forth a detailed account of the facts of this case. *See* ECF No. 101

1

at 1–4; *cf.* ECF No. 85 at 1–2. As relevant to the present Motion, in 2023, this Court confirmed arbitration awards in the amount of $16,573,835.18 and $5,127,443.48 in favor of Petitioner SB PB Victory, L.P., with interest, and entered judgment against Respondents Thomas F. Verrichia and Tonnelle North Bergen, LLC.[1] *See* ECF No. 18 at 1–3; Final Judgment at 1, *Tonnelle North Bergen, LLC v. SB PB Victory, L.P.*, No. 23-cv-03136 (E.D. Pa. Nov. 30, 2023). Since then, Petitioner has been unable to collect on these judgments, and it asserts that the judgments with interest now exceed $30,000,000. *See* ECF No. 100-7 at 31.

Petitioner has engaged in a number of efforts in state and federal court to collect on the judgments, including post-judgment discovery. *See* ECF No. 101 at 3–4 (discussing Petitioner's efforts in state court); ECF No. 91 at 1 & n.1 (denying Respondent Tonnelle North Bergen, LLC's motion to quash Petitioner's subpoena); ECF No. 102 at 1 (ordering Respondent Thomas Verrichia and non-party Nancy Verrichia to comply with subpoenas served by Petitioner). As part of these efforts, Petitioner also recently obtained a judgment issued by the New Jersey Superior Court against Respondent Thomas Verrichia's wife, Nancy Verrichia, in the amount of $2,985,000. *See* ECF No. 100-6 at 1.

On April 4, 2025, in connection with Petitioner's two-year attempt to collect on the judgments, this Court appointed Alan Gould as a receiver over Respondent Thomas Verrichia's interest in 29 corporate entities. *See* ECF No. 95 at 1 & n.1, 2–3. Now, Petitioner moves to expand the receivership and for injunctive relief against the Verrichias. *See* ECF No. 100 at 1. Petitioner served the Motion on Respondents and non-party Nancy Verrichia. *See* ECF No. 100-4 at 1.

---

[1] The first of two phases of arbitration concluded in April 2022, and this Court confirmed that arbitration award on February 22, 2023. *See* ECF No. 18 at 1–2. The second phase of arbitration concluded in June 2023, *see* Ex. "C" – Phase II Final Award at 7, *Tonnelle North Bergen, LLC v. SB PB Victory, L.P.*, No. 23-cv-03136 (E.D. Pa. Aug. 15, 2023), and this Court entered judgment on November 30, 2023 after confirming the arbitration award, *see* Final Judgment at 1, *Tonnelle North Bergen, LLC v. SB PB Victory, L.P.*, No. 23-cv-03136 (E.D. Pa. Nov. 30, 2023).

Neither Respondents nor Nancy Verrichia responded to the Motion.

**II.    DISCUSSION**

    **A. Motion to Expand Receivership**

Petitioner moves to expand the receivership to "all assets" of the Verrichias, including their interests in a list of corporate entities and "future LLCs." *See* ECF No. 100-3 at 2. The appointment of a receiver in a diversity action is a matter of federal law, though a court may look to the applicable state law to guide its analysis. *Morgan Stanley Smith Barney LLC v. Johnson*, 952 F.3d 978, 983 (8th Cir. 2020). Under federal law, a receivership is considered an "extraordinary" remedy that is "justified in extreme situations." *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993). However, two contexts where a receiver may be appropriate are to "tak[e] possession of a judgment debtor's property" and "to set aside allegedly fraudulent conveyances by the judgment debtor." *Netsphere, Inc. v. Baron*, 703 F.3d 296, 306 (5th Cir. 2012) (citation omitted); 12 Wright & Miller's Federal Practice & Procedure § 2983 (3d ed. updated May 2025) (describing these as "well-established contexts in which a receivership is thought to be appropriate").

This Court previously appointed a receiver in this case, highlighting that Petitioner obtained judgments against Respondents, Respondents had not satisfied the judgments, Petitioner procured charging orders in state court with respect to Respondent Verrichia's interests in certain corporate entities to collect on the judgments, and Petitioner had not received any distributions from these entities.[2] *See* ECF No. 95 at 1 n.1. As explained below, this Court will expand the

---

[2] In its prior Order, this Court pointed to state law to guide its analysis—specifically, sections of the Pennsylvania Uniform Limited Liability Company Act and Pennsylvania Uniform Limited Partnership Act regarding charging orders. *See Morgan Stanley*, 952 F.3d at 982–83 (affirming district court's reliance on Minnesota charging order statute to appoint a receiver and observing that, though federal law governs motions to appoint receivers, a state's charging order statute can serve as a useful guidepost in resolving the motion); *see also EarthGrains Baking Cos. v.*

receivership to include the Verrichias' interests in certain corporate entities; it will not, however, expand the extreme remedy of receivership to "all assets" of the Verrichias at this juncture.

A court may consider a number of factors in deciding whether to appoint a receiver and the scope of a receivership, including whether legal remedies are insufficient, there is "fraud or imminent danger of the property being lost, injured, diminished in value, or squandered," alternatives exist to protect the plaintiff's rights, and the harm to the movant outweighs the harm to the opponent of receivership. *See Keybank Nat'l Ass'n v. Fleetway Leasing Co.*, 781 F. App'x 119, 122 (3d Cir. 2019) (citation omitted); *see also Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009); *Aviation Supply Corp.*, 999 F.2d at 316–17. These factors support a limited expansion of the receivership in this case.

First, legal remedies have been insufficient. Petitioner has obtained judgments now totaling over $30,000,000 against Respondents, which Petitioner has been unable to satisfy for approximately two years. *See* ECF No. 100-7 at 31. In aid of executing the judgments, Petitioner procured charging liens over numerous entities controlled by and affiliated with the Verrichias. *See* ECF Nos. 100-9, 100-10, 100-11. However, Petitioner's forensics expert report ("the Scherf Report") reveals that although those entities have been collecting rents, that income is not being paid towards the judgments. *See* ECF No. 100-7 at 13, 15. Furthermore, in state court proceedings initiated to execute the judgments, Respondent Thomas Verrichia has ignored court orders, failed to participate in discovery, and been held in contempt. *See* ECF No. 100-14 at 1; ECF No. 100-16 at 1–2; *see also* ECF No. 100-15 at 1; ECF No. 90 at 2–4 (identifying numerous orders with which Thomas and Nancy Verrichia have failed to comply); *Ernest Lawrence Grp., Inc. v. Gov't Careers Ctr. of Oakland*, No. 99 CIV. 3807, 2000 WL 1655234, at *2 (S.D.N.Y. Nov. 3, 2000) (where the

---

*Sycamore*, No. 19-4174, 2022 WL 433486, at *6 (10th Cir. Feb. 14, 2022). The instant Opinion elaborates on the federal legal backdrop supporting receivership.

defendant failed to comply with court orders and participate in post-judgment discovery, receiver was appropriate).

Second, there is evidence of "fraud" and an "imminent danger" of assets being "lost, injured, diminished in value, or squandered." *Keybank Nat'l Ass'n*, 781 F. App'x at 122 (citation omitted). The Scherf Report identifies substantial transfers of assets from Respondent Thomas Verrichia to his wife, non-party Nancy Verrichia, and from the Verrichia Company to other entities after the arbitrator issued awards in favor of Petitioner and this Court confirmed the arbitration awards.[3] For example, during the relevant period, bank records show that Nancy Verrichia received over $3,800,000 "into her personal account directly from affiliated Verrichia entities," ECF No. 100-7 at 26, and nearly $1,000,000 from the Verrichia Company, *id.* at 17. Respondent Thomas Verrichia also transferred his interest in a property in Avalon, New Jersey, purchased for $1,150,000, to Nancy Verrichia for $1.00. *Id.* at 19. And though Thomas Verrichia, alongside Nancy Verrichia, owns over 100 corporate entities, wire transfers indicate millions of dollars of commingled corporate funds between entities, and testimony supports that loans between entities were made without documentation and that all entities were "controlled by [Thomas Verrichia]." *See id.* at 32–33.[4] In fact, the Scherf Report reflects that this sprawling network of entities "operat[es] out of the same location," is controlled by the Verrichias, "ha[s] no direct employees,"

---

[3] The Verrichia Company, LLC is the parent company of Respondent Thomas Verrichia's network of affiliated entities. *See* ECF No. 100-7 at 4. Thomas Verrichia is the controlling principal of the Verrichia Company. *Id.* Respondent Tonnelle North Bergen, LLC is among the entities owned directly or indirectly by Thomas Verrichia. *See id.* at 4, 7.

[4] What is more, DACK Realty, an entity wholly owned by Nancy Verrichia, received approximately $2,100,000 from 2021–2022, for serving as a second brokerage in real estate transactions where entities affiliated with Respondent Thomas Verrichia served as the primary brokerage. ECF No. 100-7 at 4, 19. Email communications show that an outside financing partner questioned the identity of DACK Reality, the need for its involvement, and what it believed to be an above-market commission, and that Respondent Thomas Verrichia failed to disclose Nancy Verrichia's involvement in DACK Reality throughout these communications. *See id.* at 20–25.

and uses "intermingled bank accounts." *Id.* at 4. All told, the Verrichias' pattern of transfers after arbitration reflects attempts to avoid judgment. And these transfers, combined with the Verrichias' commingled business practices, risk assets being lost.

Likewise, alternative measures have been minimally effective in protecting Petitioner's rights. *See Keybank Nat'l Ass'n*, 781 F. App'x at 122. As discussed above, the charging liens placed on Respondent Thomas Verrichia's interest in certain entities have been ineffective, despite evidence that these entities are collecting rents. *See* ECF No. 100-7 at 13, 15. Furthermore, though Petitioner served subpoenas and notices of deposition on Thomas and Nancy Verrichia, the Verrichias failed to appear for their depositions or produce the subpoenaed records—and indeed, failed to respond to Petitioner's subsequent motion to compel compliance with the subpoenas at all. *See* ECF No. 101 at 4. And given the transfers of property between Thomas and Nancy Verrichia and transfers of funds discussed above, the sale of property or other assets has failed to offer a meaningful remedy. *See* ECF No. 100-7 at 17, 19, 26; *Aviation Supply Corp.*, 999 F.2d at 317 (affirming appointment of a receiver where defendant transferred his assets to a family business pending a writ of execution).

However, only a limited expansion of the receivership is warranted. Petitioner seeks to expand the receivership to cover "all assets of Thomas Verrichia and Nancy Verrichia," including specific entities and all "future LLCs formed by Thomas Verrichia and Nancy Verrichia." ECF No. 100-3 at 2. At this juncture, that all-encompassing proposed receivership sweeps more broadly than needed to afford Petitioner adequate remedies, and its benefit is not outweighed by the harm to Respondents. *See Keybank Nat'l Ass'n*, 781 F. App'x at 122; *cf. Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 198 (3d Cir. 1990) ("[A] defendant—even an [allegedly] unsavory one—is harmed more than necessary by an injunction encumbering far more of its assets than are at stake

in the underlying litigation.").

The Court will expand the receivership to cover Respondent Thomas Verrichia's and Nancy Verrichia's transferrable interests in the specific entities identified by Petitioner's proposed order. *See* ECF No. 100-3 at 8; *F.T.C. v. Johnson*, 567 F. App'x 512, 514 (9th Cir. 2014) (A receivership may extend to the assets of non-parties "when doing so is necessary to preserve the possibility of full relief."). The Court will also order the Verrichias to cooperate with the receiver and not frustrate the receivership. *See infra* Section II.B. Combined, these measures address the chief concerns identified by Petitioner: the loss of assets due to transfers among Thomas and Nancy Verrichia, the seemingly sham nature of the Verrichias' network of entities, and the inefficacy of charging orders. However, given the extreme nature of a receivership, *Aviation*, 999 F.2d at 316, a receivership over any and all assets of the Verrichias and hypothetical future LLCs is unwarranted at this stage. Should the Verrichias attempt to circumvent collection of the judgments by creating new LLCs, the Court may revisit this conclusion.

The Motion to Expand Receivership will therefore be granted in part and denied in part. Furthermore, as stated in Petitioner's proposed order, the receiver will be compensated "in accordance with the fee agreement between [Petitioner] and receiver, and counsel for receiver shall be paid by the SB PB" without this Court's involvement. *See* ECF No. 100-3 at 6.

### B. Motion for a Preliminary Injunction

Petitioner moves for a preliminary injunction requiring the Verrichias to disclose the location of their assets, relinquish control of certain entities, and surrender their books and records to the receiver. ECF No. 100-2 at 13. But because Petitioner is seeking relief after the entry of judgment, a preliminary injunction—which is issued pending a final decision in a case—does not appear to be proper. *See Shamrock Power Sales, LLC v. Scherer*, No. 12-CV-8959, 2016 WL 6102370, at *2 (S.D.N.Y. Oct. 18, 2016). Instead, Petitioner's Motion falls under Federal Rule of

7

Civil Procedure 69, which governs the execution of judgments.[5] *Id.* ("[A] preliminary injunction under Rule 65 would be an inappropriate mechanism for seeking postjudgment relief, as the execution of judgments is governed by Rule 69."); *see also Saadeh v. Kagan*, No. 20-CIV-1945, 2022 WL 4115949, at *2–3 (S.D.N.Y. Sept. 9, 2022). And to the extent that Petitioner moves to enjoin the Verrichias to comply with the Court's Order appointing a receiver, this Court also has "broad discretion" to use "its inherent equitable powers to ensure compliance with [its] orders." *Nat'l L. Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affs.*, 931 F. Supp. 2d 167, 174 (D.D.C. 2013).

Rule 69 requires federal courts to comply "with the procedure of the [forum] state" to enforce a monetary judgment unless a "federal statute governs." Fed. R. Civ. P. 69(a)(1). The Rule also authorizes a judgment creditor to "obtain discovery from any person—including the judgment debtor" as permitted by either federal or state law. Fed. R. Civ. P. 69(a)(2). The first injunctive relief sought by Petitioner—to require the Verrichias to "advise [of] the location of all individual assets and corporate assets"—is a matter of Rule 69 discovery. Petitioner may request this information from the Verrichias pursuant to Rule 69. *See id.* And to the extent that the Verrichias fail to respond to such a request, Petitioner may seek relief as outlined by the Federal Rules governing discovery—rather than through a motion for a preliminary injunction. *See, e.g.*, Fed. R.

---

[5] Some district courts have applied the preliminary injunction standard, pursuant to Federal Rule of Civil Procedure 65, to motions for post-judgment relief; however, Rule 69 appears to supply the correct standard after the litigation ends. *See Teamsters Loc. 456 Pension, Health & Welfare, Annuity, Educ. & Training, Indus. Advancement & Legal Servs. Funds v. CRL Transp., Inc.*, No. 18-CV-2056, 2020 WL 3619048, at *9 (S.D.N.Y. July 2, 2020) (noting that courts have applied both Rules 65 and 69 to motions for injunctive relief following entry of judgment and concluding that Rule 69 is the proper rule to analyze such motions). Regardless, application of the preliminary injunction standard would not change the disposition of this Motion, since Petitioner has succeeded on the merits by obtaining judgments and the Court's instant decision is tailored to preventing the Petitioner from suffering the irreparable harm of being unable to collect on the judgments due to fraud and commingling of assets. *See Hoxworth*, 903 F.2d at 198, 206.

8

Civ. P. 37 (governing failure to cooperate in discovery and make disclosures). For this reason, the Court will deny the Motion with request to this relief.

The next injunctive relief sought by Petitioner is to require the Verrichias to relinquish control over the network of affiliated corporate entities that they own and surrender their books and records to the receiver. *See* ECF No. 100-2 at 13. However, as addressed above, the Court will expand the receiver's authority to these entities, thereby requiring the Verrichias to relinquish control. *See Kelley v. BMO Harris Bank Nat'l Ass'n*, 115 F.4th 901, 905 (8th Cir. 2024) (a district court's appointment of a receiver over property interests permits the receiver to take control or custody of that property for the benefit of the litigation). Petitioner points to no "procedure of the [forum] state"—Pennsylvania—that authorizes additional relief. *See* Fed. R. Civ. P. 69(a)(1). This Court will not speculate about the measures under Pennsylvania law that Petitioner may intend to invoke to execute the judgments.

However, the Court will use its "inherent equitable powers," *see Nat'l L. Ctr. on Homelessness & Poverty*, 931 F. Supp. 2d at 174, to order the Verrichias to fully cooperate with the receiver and not frustrate the receiver's duties. *See Five Star Bank v. Mott*, No. 24-CV-6153, 2024 WL 2091769, at *1 (W.D.N.Y. May 9, 2024) (discussing a similar order issued by the court). Given evidence that the Verrichias are shielding assets from the receiver, *see supra* Section II.A, that relief is necessary to ensure compliance with the Court's order appointing a receiver. *See Nat'l L. Ctr. on Homelessness & Poverty*, 931 F. Supp. 2d at 174. To the extent it becomes warranted, Petitioner may seek additional measures pursuant to Rule 69 to satisfy the judgments at issue.

### III.   CONCLUSION

In the manner described above, Petitioner's Motion (ECF No. 100) will be **GRANTED** in part and **DENIED** in part. An appropriate Order will follow.

                                      **BY THE COURT:**

                                      /s/ Chad F. Kenney

                                      _____
                                      **CHAD F. KENNEY, JUDGE**